# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
April 12, 2013 Session

## JENNIFER ANNE KRAUS v. BARRY MARTIN THOMAS

**Appeal from the Circuit Court for Davidson County**
No. 08D1698      Carol Soloman, Judge

**No. M2012-00877-COA-R3-CV - Filed June 7, 2013**

In this appeal from the Final Decree of Divorce, the father of the parties' four minor children challenges the division of marital property, the permanent parenting plan, an upward deviation in child support of $16,875 per year to help pay for private school for three of the children, and a $50,000 judgment for the mother's attorney's fees. We affirm the division of the marital property and the parenting schedule. As for requiring the father to pay up to $16,875 per year toward private school costs of three of the children, we have determined that the trial court failed to apply the correct legal standard for such an upward deviation and find that the father does not have the financial means to pay an upward deviation. As for requiring the father to pay $50,000 of the mother's attorney's fees, we have determined that she was given 60 percent of the marital assets and her income is substantially more than that of the father's, thus, applying the ability to pay and the need standard, we find no basis for requiring the father to pay the mother's attorney's fees at trial or on appeal. Thus, we reverse the award for attorney's fees.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Reversed in Part

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, J.J., joined.

Gregory Dye Smith and Christopher Brett Jaeger, Nashville, Tennessee, for the appellant, Barry Martin Thomas.

James Leroy Weatherly, Jr., for the appellee, Jennifer Anne Kraus.

## OPINION

The parties in this action, Jennifer Kraus ("Mother") and Barry Thomas ("Father") were married for fifteen years and have four minor children, ages 12, 10, 8, and 7.[1] Father, who was fifty-six years old at the time of the divorce, is employed as a satellite technician for a television station in the Nashville area earning a salary of approximately $50,000 a year. Father also receives approximately $12,996 a year in mandatory distributions from an inherited IRA. Mother was forty-four years old at the time of trial and works for the same television station as a television reporter and weekend anchor. It is undisputed that Mother's income is substantially greater than Father's income.

Mother initiated the divorce proceedings by filing for divorce on June 13, 2008, citing irreconcilable differences; Father filed an answer.[2] An agreed order was entered during the pendency of the divorce proceedings naming Mother as the primary residential parent and ordering Father to pay $1,500 in pendente lite support.

A trial was held over five days in September and October of 2011, and February of 2012. The trial court issued its Final Order on April 2, 2012, which declared the parties divorced pursuant to Tennessee Code Annotated § 36-4-129. Mother was designated the primary residential parent and she was awarded 280 days of parenting time, Father was awarded 85 days. Mother was given sole decision-making authority over the children's non-emergency health care and extracurricular activities. The parties were given joint decision-making over the children's religious upbringing. Father was ordered to pay child support of $625.00 per month until the youngest child finished preschool and then Father's obligation would increase to $1,252 per month.

Mother was also vested with sole decision-making authority regarding the education of the minor children and whether the three older children would remain in private school. If the three older children remained in private school, Father was ordered to make an application to the school for financial aid. Further, both parents were ordered to seek financial assistance from the Doris Fox Generation Skipping Irrevocable Trust, of which Father and the children were the beneficiaries, seeking distributions sufficient to cover the

---

[1]Father has one child from a previous marriage and this child is not at issue in this appeal.

[2] Mother subsequently filed an Amended and Supplemental Complaint alleging additional grounds for divorce; Father answered denying the additional grounds and asserting grounds upon which he should be granted the divorce. These additional grounds are not relevant to this appeal as the parties were declared divorced pursuant to Tennessee Code Annotated § 36-4-129.

remaining expenses.[3] The order specified that in the event the Trustee, in its discretion, paid less than the remaining expense for private schooling for the three children, and Mother decided to leave the children in private school, Father was ordered to pay 75% of the educational expenses or $16,875.00 per school year for the three oldest children, whichever is less; Mother was required to pay any additional expenses. The court reserved any ruling regarding private education of the youngest child, who was not yet in the first grade.

The trial court awarded Mother 60% of the marital property and ordered Father to pay Mother's attorney's fees of $50,000.

This appeal by Father followed. Father challenges the division of marital property, the permanent parenting plan, the upward deviation of child support requiring him to pay $16,875 per year for private school tuition, and the award of Mother's attorney's fees. Mother requests her attorney's fees on appeal. We shall address each issue in turn.

**ANALYSIS**

### I. PARENTING SCHEDULE

Father appeals the trial court's parenting schedule, which gave Mother 280 days of parenting time and Father 85 days. Father argues that the parenting schedule adopted by the trial court failed to maximize his parenting time as required by Tennessee Code Annotated § 36-6-401.

This court reviews decisions in divorce cases de novo with a presumption that the trial court's findings of fact are correct unless the evidence preponderates otherwise. *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Nichols v. Nichols*, 792 S.W.2d 713, 716 (Tenn. 1990). Appellate courts are reluctant to second-guess a trial court's determination regarding parenting schedules.[4] *See Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). "Trial courts have broad discretion in devising permanent parenting plans and designating the primary residential parent. In reaching such decisions the courts should consider the unique circumstances of each case." *Burton v. Burton*, No. E2007-02904-COA-R3-CV, 2009 WL 302301, at *2 (Tenn. Ct. App. Feb. 9, 2009) (citing *Parker*, 986

---

[3]Prior to the institution of these divorce proceedings, another family trust had been paying the children's private school tuition and costs.

[4]Older decisions from our courts refer to custody or visitation agreements, however, we now refer to such arrangements as parenting plans or parenting schedules; the cases cited, however, remain on point for the substantive law.

S.W.2d at 563); *see also Nelson v. Nelson*, 66 S.W.3d 896, 901 (Tenn. Ct. App. 2001). A trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Nelson*, 66 S.W.3d at 901 (citing *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997)).

Trial courts have broad discretion to fashion parenting plans that best suit the unique circumstances of each case. *See Parker*, 986 S.W.2d at 563. Furthermore, it is not the role of the appellate courts to "tweak [parenting plans] . . . in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001).

Decisions regarding parenting schedules often hinge on subtle factors, such as the parents' demeanor and credibility during the proceedings. *Adelsperger*, 970 S.W.2d at 485. Thus, a trial court's decision regarding a parenting plan will be set aside only when it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge*, 42 S.W.3d at 88.

The trial court designated Mother as the primary residential parent and she was given 280 days of parenting time. Father was given 85 days of parenting time, which was every other weekend from 6:00 p.m. on Friday until 6:00 p.m. on Sunday, alternating holidays, alternating spring break and fall break, and two non-consecutive weeks every summer. The trial court stated that it was not comfortable giving Father additional parenting time. Father wanted additional parenting time on the weekends when Mother was working as the morning weekend television anchor. The court denied this request stating it would result in Mother having limited time with the children due to her work schedule. The trial court further stated that Father needed counseling to learn how to work with the family as a unit, noting that Father had made negative comments about Mother in front of the children. The court stated that Father could "earn" more time with the children if he committed himself to counseling and could demonstrate that he was capable of having a constructive impact on the lives of the children if he spent more time with them.

Tennessee Code Annotated § 36-6-404(b) sets forth the considerations the trial court should make when determining the parenting time of the parties:

> (b) Any permanent parenting plan shall include a residential schedule as defined in § 36-6-402. The court shall make residential provisions for each child, consistent with the child's developmental level and the family's social and economic circumstances, which encourage each parent to maintain a loving, stable, and nurturing relationship with the child. The child's residential schedule shall be consistent with this part. If the limitations of § 36-6-406 are

not dispositive of the child's residential schedule, the court shall consider the following factors:

(1) The parent's ability to instruct, inspire, and encourage the child to prepare for a life of service, and to compete successfully in the society that the child faces as an adult;

(2) The relative strength, nature, and stability of the child's relationship with each parent, including whether a parent has taken greater responsibility for performing parenting responsibilities relating to the daily needs of the child;

(3) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interests of the child;

(4) Willful refusal to attend a court-ordered parent education seminar may be considered by the court as evidence of that parent's lack of good faith in these proceedings;

(5) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(6) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(7) The love, affection, and emotional ties existing between each parent and the child;

(8) The emotional needs and developmental level of the child;

(9) The character and physical and emotional fitness of each parent as it relates to each parent's ability to parent or the welfare of the child;

(10) The child's interaction and interrelationships with siblings and with significant adults, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(11) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(12) Evidence of physical or emotional abuse to the child, to the other parent or to any other person;

(13) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(14) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(15) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(16) Any other factors deemed relevant by the court.

Father's primary argument on appeal is that he should be awarded parenting time on every weekend since Mother works Saturday and Sunday mornings, during which time the children are cared for by the maternal grandparents. Mother counters stating that she works only three hours on Saturday mornings and two hours on Sunday mornings and that she is able to exercise her parenting time with the children as soon as she gets off the air. Further, Mother argues that she has always been the primary caretaker of the children, she is the parent who organizes family activities, enrolls the children in extracurricular activities, and she is the one primarily responsible for taking the children to their extracurricular activities.

We recognize that the parenting schedule adopted by the trial court affords Mother substantially more time with the parties' four children; however, the evidence in the record, when considered in conjunction with the factors set forth at Tennessee Code Annotated § 36-6-404(b), supports this parenting schedule. As a practical matter, Father's work schedule rendered mid-week parenting time too unpredictable because his job responsibilities often required that he work late on weekdays, including Friday evenings. There is also evidence that Father made very negative comments about Mother in the presence of the children, which made cooperation between the parties regarding the children unnecessarily difficult. *See* Tenn. Code Ann. § 36-6-404(b)(3). It is also relevant that Mother was the primary caretaker of the children and the impetus for their involvement in extracurricular activities and community events. *See* Tenn. Code Ann. § 36-6-404(b)(6). In contrast, the trial court found that Father "withdrew" from his involvement in the children's activities as a result of the problems in the parties' marriage. Father believed the children were involved in too much, despite that each child was only involved in one activity each. Mother testified that Father often did not participate in family activities or dinners during the marriage, instead choosing to merely watch television alone. *Id*. We also note that the trial court encouraged Father to attend counseling, stating such counseling may provide a basis upon which increase his potential for more parenting time in the future.[5]

_____

[5]The trial court stated that obtaining counseling may help Father "earn" more parenting time in the future, thus, it could be argued in a future hearing that successfully completing counseling was reasonably anticipated. If that occurred, Father may be precluded from asserting it constituted a substantial and material change of circumstance in order to obtain more parenting time. *See* Tenn. Code Ann. § 36-6-101(a)(2)(B). Therefore, it is important to note that this well-intended statement by the trial court should not be construed as "reasonably anticipated" and, thus, impede Father from petitioning for additional parenting time based upon a substantial and material change of circumstance. We made a similar observation in *Duke v. Duke*, No. M2009-02401-COA-R3-CV, 2012 WL 1971144, at *3-4 (Tenn. Ct. App. June 1, 2012) (perm. app. denied. Oct. 18, 2012), wherein this court was concerned that a father who struggled with addiction and was encouraged by the trial court to achieve sobriety in order to obtain additional parenting time, would be unable
(continued...)

As stated earlier, we review the trial court's findings of fact with the presumption they are correct unless the evidence preponderates otherwise, *Kendrick*, 90 S.W.3d at 570, and we have concluded that the evidence does not preponderate against the court's findings in this case. Furthermore, the trial court has broad discretion in devising permanent parenting plans and designating the primary residential parent, we are reluctant to second-guess a trial court's determination regarding parenting schedules, and it is not the role of this court to "tweak" parenting plans. *See Parker*, 986 S.W.2d at 563; *Adelsperger*, 970 S.W.2d at 485; *Eldridge*, 42 S.W.3d at 88. Thus, based on our review of the record and the applicable factors, we affirm the plan and parenting schedule adopted by the trial court.

## II. EXTRAORDINARY EDUCATIONAL EXPENSES FOR PRIVATE SCHOOL

Father asserts the trial court erred by ordering him to pay an upward deviation in child support for private school expenses in an annual amount of the lesser of $16,875.00 or 75% of the additional expenses. Father further asserts that the trial court did not consider or apply the child support guidelines in ordering him to pay private school tuition and expenses that greatly exceed his financial means and which, without including his presumptive child support obligation and additional insurance obligations, represent more than one-fourth of Father's gross income.

Before we begin our analysis, it must be noted that the parties' three older children were in private school during the marriage, thus, it would appear that the parents have the financial means to keep the children in private school absent a downturn in their collective incomes. However, the record reveals that the parents paid only a modest amount of the costs of the children's private education. In fact, the costs of private education, the tuition of which was $15,000 per child per school year, were paid by an educational trust created by Father's aunt and grandmother. The initial corpus of that trust was $150,000, but during the pendency of these proceedings, the assets of that trust were depleted by the costs of the children's private education. The only trust that remains is the Doris Fox Generation Skipping Irrevocable Trust, of which Father and all five of his children are beneficiaries; however, this trust has never made a financial contribution to defray the costs of the children's private education.

Whether the Doris Fox Trust chooses to make distributions to pay some or all of the private school expenses lies in the sole discretion of the trustee, which is an independent

---

[5](...continued)
to assert his sobriety constituted a substantial and material change. We noted that should the father become sober, the fact that the trial court reasonably anticipated that sobriety would not prevent an otherwise meritorious petition for modification pursuant to Tennessee Code Annotated § 36-6-101(a)(2)(B). *Id*. at *4.

corporate institution. Significantly, neither Father, Mother nor the children have any control over the trustee's decision. Therefore, we may not assume that the Doris Fox Trust will make any contributions, and yet we do not want to assume that it will not. Thus, we must determine whether an upward deviation for extraordinary educational expenses for private school is appropriate and, if so, how much to deviate should the Doris Fox Trust not cover the costs of the private school tuition.[6]

The courts look to the Child Support Guidelines promulgated by the Tennessee Department of Human Services in accordance with Tennessee Code Annotated § 36-5-101(e) to make such determinations. *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). The statute requires the court to apply the Child Support Guidelines as a rebuttable presumption. Tenn. Code Ann. § 36-5-101(e)(1)(A); Tenn. Comp. R. & Regs. 1240-2-4-.07(1)(a) (2008). A court may order a deviation from the amount of support if the deviation complies with the requirements of the Child Support Guidelines, and "[t]he amount or method of such deviation is within the discretion of the tribunal." Tenn. Comp. R. & Regs. 1240-2-4-.07(1)(b). However, the trial court is required to "state in its order the basis for the deviation and the amount the child support order would have been without the deviation." *Id*. "In deviating from the Guidelines, primary consideration must be given to the best interest of the child for whom support under these Guidelines is being determined." *Id*.

The Child Support Guidelines further provide:

(c) When ordering a deviation from the presumptive amount of child support established by the Guidelines, the tribunal's order shall contain written findings of fact stating:

1. The reasons for the change or deviation from the presumptive amount of child support that would have been paid pursuant to the Guidelines; and

2. The amount of child support that would have been required under the Guidelines if the presumptive amount had not been rebutted; and

---

[6]Father argues that permitting distributions from the irrevocable trust would destroy the trust; however, that decision resides solely within the discretion of the trustee of the irrevocable trust, and as the trial court itself recognized, the court does not have the authority to direct the trust to make any distributions or payments for the children's extraordinary education expenses. The trustee has the sole discretion on how much, if any, money should be distributed and whether such distributions would be to the detriment of the trust.

3. How, in its determination,

> i) Application of the Guidelines would be unjust or inappropriate in the particular case before the tribunal; and

> (ii) The best interests of the child for whom support is being determined will be served by deviation from the presumptive guideline amount.

Tenn. Comp. R. & Regs. 1240–2–4–.07(1)(a)–(c) (2008).

When making a determination regarding a request for deviation, the Child Support Guidelines provide that the trial court:

> [S]hall consider all available income of the parents as defined by this chapter and shall make a written finding that an amount of child support other than the amount calculated under the Guidelines is reasonably necessary to provide for the needs of the minor child or children for whom support is being determined in the case immediately under consideration.

Tenn. Comp. R. & Regs. 1240–2–4–.07(2)(a) (2008).

The Guidelines also specifically address education expenses as a deviation from the standard child support amounts:

> (d) Extraordinary Expenses.

> The Schedule includes average child rearing expenditures for families based upon the parents' monthly combined income and number of children. Extraordinary expenses are in excess of these average amounts and are highly variable among families. For these reasons, extraordinary expenses are considered on a case-by-case basis in the calculation of support and are added to the basic support award as a deviation so that the actual amount of the expense is considered in the calculation of the final child support order for only those families actually incurring the expense. These expenses may be, but are not required to be, divided between the parents according to each parent's [Percentage of Income].

1. Extraordinary Educational Expenses.

(i) Extraordinary educational expenses may be added to the presumptive child support as a deviation. Extraordinary education expenses include, but are not limited to, tuition, room and board, lab fees, books, fees, and other reasonable and necessary expenses associated with special needs education or private elementary and/or secondary schooling that are appropriate to the parents' financial abilities and to the lifestyle of the child if the parents and child were living together.

(ii) In determining the amount of deviation for extraordinary educational expenses, scholarships, grants, stipends, and other cost-reducing programs received by or on behalf of the child shall be considered.

(iii) If a deviation is allowed for extraordinary educational expenses, a monthly average of these expenses shall be based on evidence of prior or anticipated expenses and entered on the Worksheet in the deviation section.

Tenn. Comp. R. & Regs. 1240–2–4–.07(2)(d) (2008).

In this case the trial court did not reference the Child Support Guidelines, although the court stated that continuing private school education would be in the best interest of the three oldest children.[7] We agree that it is in the children's best interests to remain in their present school where they are excelling; nevertheless, the threshold question in this case is whether the parents have the financial means to pay for the three children's private schooling in the event they cannot obtain sufficient financial aid and sufficient distributions from the Doris Fox Generation Skipping Irrevocable Trust.

In the Permanent Parenting Plan, the trial court stated the following in regard to the private school tuition:

The Mother has been vested with sole decision making authority regarding the educations of the minor children. The children are the beneficiaries of the Doris Fox Generation Skipping Irrevocable Trust as is the Father. If the Mother elects for the children to continue in their private school

---

[7]The trial court reserved the issue of private schooling for the youngest child.

education then the Mother in her capacity as the primary custodian of the children and Father in his capacity as Father of the children shall make application to the children's school for financial aid. Thereafter the parties shall make application to the Trust for distributions sufficient to pay the private school education expenses not covered by financial aid. In the event the Trustee in the exercise of its discretion pays less than the entire remaining expense the Mother shall elect whether the children shall attend private school or public school. If she elects private school, the liability of the Father for education expenses will be 75% of the remaining expense or $16,875.00 per school year for the three oldest children, whichever is less. Any additional remaining tuition would be the responsibility of the Mother. The Court reserves any ruling regarding the private education of the youngest child. . . .

In the event the Mother's portion of the educational expenses exceed $5,625 per school year for the three oldest children, she may elect to send the children to public school. However, because the oldest child is in the fifth grade at Oak Hill School, she shall be allowed to complete her elementary education at Oak Hill School. The parents shall make an application for financial aid, an application for disbursement from the Trust and shall share on a 75/25 basis father/mother any remaining private education expense for the oldest child to complete Oak Hill School.

In the event the children do not continue private school for their elementary education due to the inability to obtain sufficient financial aid from the school, and sufficient distributions from the trust, the Mother is vested with authority to enroll the children in any private school for high school education that she determines to be appropriate. In that event the parties shall make application for financial aid, shall make application for distribution from the Trust and shall be responsible for any remaining education expense 75/25 father/mother until the children graduate from high school.

Except for the above analysis, we are unable to find anything in this record that reveals whether the trial court conducted the thorough analysis for a deviation as is required by the Child Support Guidelines and case law. In the case of *In re Andrea A.R.*, No. M2011-00574-COA-R3-JV, 2012 Wl 397475, *7 (Tenn. Ct. App. Feb. 7, 2012), this court noted:

The extraordinary education expense guidelines mandate that the trial court shall, first, consider "whether the private elementary or secondary schooling is 'appropriate to the parents' financial abilities and . . . to the lifestyle of the child if the parents and the child were living together.'" [*Richardson v.*

*Spanos*, 189 S.W.3d 720, 728 (Tenn. Ct. App. 2005)] (quoting Tenn. Comp. R. & Regs. 1240-2-4-.07(2)(d)(1)(ii) (2005)). If the court finds private schooling is appropriate, then the trial court is required to calculate the extraordinary education expenses separately and add them to the base child support award. *Id*. (citing Tenn. Comp. R. & Regs. 1240-2-4-.07(2)(d)).

Thus, if financial aid and distributions from the Doris Fox Trust do not cover the entire costs, it is incumbent upon this court to conduct the requisite analysis to determine whether an upward deviation is appropriate in order to fund the extraordinary expense of private schooling.

The costs of extraordinary expenses may be divided according to the parents' Percentage of Income. Tenn. Comp. R. & Regs. 1240-2-4-.07(2)(d). In this case, Mother earns substantially more income than Father. Father has a gross monthly salary of $4,138.55, and he receives monthly distributions from an IRA of $1,083. Thus, his monthly gross income is $5,221.55 and his annual gross income is $62,658.60.

Father's base child support obligation is $1,252 per month, which is $15,024 annually. Additionally, Father is required to pay premiums for life insurance, and one half of the cost of summer camp and the children's unpaid medical costs. The record indicates that the cost of the life insurance Father must maintain for the children's benefit is $4,400 a year, that Father's share of the 2011 summer camp for three of the children was $2,465, and that Father's share of the medical, dental and pharmaceutical expenses that are not covered by insurance was estimated to be $600 a year. These additional expenses bring Father's annual obligations to approximately $22,500 per year. When Father's potential obligation of $16,875 per year for private schooling for the three older children is added, his court ordered financial obligations are in excess of $39,000 per year.

Father's gross annual income is $62,660; however, after income tax and social security obligations are deducted, which total approximately $869 a month and $10,440 per year, his net annual income is only $52,220. The total of Father's court ordered obligations of $39,000 represents 74% of Father's annual net income of $52,220, an amount that greatly exceeds Father's financial means. Accordingly, a substantial reduction or elimination of the upward deviation for private schooling is necessary.

If we reduce the upward deviation of $16,875 by half, to $8,437.50, then Father's court ordered obligations are reduced from $39,000 per year to $30,562.50, which represents 58% of Father's net income. If we eliminate the upward deviation for private schooling, then Father's obligations are reduced to $22,500 per year, which represents 43% of Father's net income, leaving Father with $2,476 per month to pay his other monthly expenses.

On his Income and Expense declaration, Father states that his expenses, if the upward deviation is included, exceed his net income by $2,524 a month. If the upward deviation of private schooling is eliminated, $1,406.25 a month, Father's monthly expenses would still exceed his monthly net income, at least by his calculations. Although some of the listed expenses were eliminated or reduced as a result of the divorce due, in part, to the allocation of child support obligations and the sale of the marital residence, Father's financial means are not sufficient to justify an upward deviation for extraordinary educational expenses of his child support.

As noted earlier in our discussion of the guidelines for extraordinary educational expenses, such expenses may be added to the presumptive child support as a deviation provided such expenses are appropriate to the parents' financial abilities and to the lifestyle of the children if the parents and child were living together. Tenn. Comp. R. & Regs. 1240–2–4–.07(2)(d). In this case, the record clearly indicates that, if the parents were still living together, the proposed extraordinary educational expenses for the three children who are presently in private school, not to mention a fourth who may go to private school, are not appropriate when we consider the parents' financial abilities.[8] *See id*.

Accordingly, the facts preponderate against any upward deviation of Father's child support obligations for private schooling; accordingly the award of an upward deviation is reversed. This decision, however, does not affect Mother's right to determine whether the children remain in private school, nor does it relieve Father of the obligation to apply for financial aid and for distributions from the Doris Fox Trust. Hopefully, such aid and/or distributions will be sufficient to allow the children to continue their private education if that is Mother's desire.

### III. MARITAL PROPERTY

Father argues that the trial court erred in its division of the marital property, awarding 60% to Mother and 40% to Father. He contends the trial court failed to consider the factors set forth at Tennessee Code Annotated § 36-4-121(c) when dividing the marital property.

The division of the parties' marital estate begins with the classification of the property as separate or marital property. *Miller v. Miller*, 81 S.W.3d 771, 775 (Tenn. Ct. App. 2001). Tennessee is a "dual property" state, thus, property cannot be included in the marital estate

---

[8]The gross income of both parents, including Father's salary, his IRA income, and Mother's salary, is approximately $150,000 annually, which is a handsome sum but it is insufficient to pay the costs for three children to attend private school, which exceeds $45,000 annually, not to mention four should the youngest child also attend private school, which would increase the cost of tuition alone to $60,000 annually.

unless it is deemed "marital property." *Smith v. Smith*, 93 S.W.3d 871, 875-76 (Tenn. Ct. App. 2002). The definition of "marital property" is found in Tenn. Code Ann. § 36-4-121(b)(1)(A). "Separate property," as defined in Tenn. Code Ann. § 36-4-121(b)(2)(A)-(F), is not marital property. Therefore, separate property should not be included in the marital estate. *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 246 (Tenn. 2009). Property classification is a question of fact. *Bilyeau v. Bilyeau*, 196 S.W.3d 131, 135 (Tenn. Ct. App. 2005). Thus, we review the trial court's classification using the familiar standard of review in Tennessee Rule of Appellate Procedure 13(d).

Once property has been classified as marital property, the court should place a reasonable value on property that is subject to division. *Edmisten v. Edmisten*, No. M2001-00081-COA-R3-CV, 2003 WL 21077990, at *11 (Tenn. Ct. App. May 13, 2003). The parties have the burden to provide competent valuation evidence. *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998). When valuation evidence is conflicting, the court may place a value on the property that is within the range of the values presented. *See Watters v. Watters*, 959 S.W.2d 585, 589 (Tenn. Ct. App. 1997). Decisions regarding the value of marital property are questions of fact; thus, they are not second-guessed on appeal unless they are not supported by a preponderance of the evidence. *Kinard*, 986 S.W.2d at 231.

Once the marital property has been valued, the trial court is to divide the marital property in an equitable manner. Tenn. Code Ann. § 36-4-121(a)(1); *Miller*, 81 S.W.3d at 775. A division of marital property in an equitable manner does not require that the property be divided equally. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002). "Dividing a marital estate is not a mechanical process but rather is guided by considering the factors in Tennessee Code Annotated § 36-4-121(c)." *Kinard*, 986 S.W.2d at 230. "Trial courts have wide latitude in fashioning an equitable division of marital property." *Id*. Therefore, this court accords great weight to the trial court's division of marital property. *Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996). Thus, we defer to the trial court's division of the marital estate unless it is inconsistent with the factors in Tennessee Code Annotated § 36-4-121(c) or is not supported by a preponderance of the evidence. *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994).

In this case, the marital property consisted of the marital residence, a separate residence Mother purchased during the pendency of the divorce, the parties' bank accounts, investment accounts, retirement accounts, life insurance policies, and vehicles. The total value of the marital assets was listed as $1,048,882.35. Thus, the value of Mother's 60%

share of the marital assets is $619,653.79 and Father's is $429,228.56.[9]

The trial court based its decision on the substantial contribution of Mother to the marriage as spouse, wage earner, parent, and her role of living in the marital residence with Father, and the substantial separate assets of Father in comparison to Mother's separate assets, which are modest. Tennessee Code Annotated § 36-4-121(c) sets forth the following factors to be considered when dividing the marital property of the parties:

(1) The duration of the marriage;
(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
(3) The tangible or intangible contributions by one (1) party to the education, training or increased earning power of the other party;
(4) The relative ability of each party for future acquisitions of capital assets and income;
(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.
(6) The value of the separate property of each party;
(7) The estate of each party at the time of the marriage;
(8) The economic circumstances of each party at the time the division of property is to become effective;
(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
(10) The amount of social security benefits available to each spouse; and
(11) Such other factors as are necessary to consider the equities between the parties.

---

[9]While the parties' values contained in their briefs vary, there is no real dispute as to the value of the property divided in the divorce, merely, the division of the property by the trial court. In its order, the trial court stated that it used Mother's submitted statement of assets and liabilities and thus we shall use the values of Mother's.

Based upon our review of the record, we find the 60/40 division of the marital assets is not inequitable, particularly in light of Father's separate assets. This is because the trial court's decision is consistent with the factors set forth at Tennessee Code Annotated § 36-4-121(c). Specifically, the trial court correctly considered the separate assets of the parties as set forth as a factor in Tennessee Code Annotated § 36-4-121(c)(6). Mother's separate assets amounted to only $17,578.38, while Father had separate assets of $380,945.30.[10] Further, the trial court found that Mother contributed more to the marriage as wage earner and parent, taking a far more active role in the children's lives. Tenn. Code Ann. § 36-4-121(c)(5). We also acknowledge that Father earns less income than Mother; however, his substantial separate assets and the retirement benefits guaranteed Father as a beneficiary of the trust, are proper considerations in the division of the marital property. While Father argues the economic consequences of the divorce are harsher on him due to the trial court's requirement that he pay a substantial portion of private school tuition, one half the children's uncovered medical expenses, maintaining a life insurance policy benefitting the children, and one half of the children's summer camp expenses, as discussed previously, we have held Father is not responsible for any additional child support in the form of an upward deviation for the children's private school tuition. Further, Mother is also responsible for the other half of the children's expenses.

Finding the evidence does not preponderate against the trial court's decision, *see Brown*, 913 S.W.2d at 168, we affirm the division of the marital property.

## IV. ATTORNEY'S FEES

Father asserts the trial court erred in requiring him to pay Mother's attorney's fees of $50,000 from his share of the marital property division.

An award of attorney's fees is appropriate when the disadvantaged spouse's income is not sufficient to pay her attorney's fees and the divorce fails to provide her with a revenue source, such as from the property division, or assets from which to pay her attorney's fees. *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App.2002).

Attorney's fees in a divorce action constitute alimony in solido. *Id.*; *Wilder v. Wilder*, 66 S.W.3d 892, 894 (Tenn. Ct. App.2001); *Herrera*, 944 S.W.2d at 390; *Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. Ct. App.1992); *Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn. Ct. App.1992). When determining whether to award attorney's fees, the trial court

---

[10]We note that the parties disagree somewhat as to the value of the separate property by Father. However, the amount of the disagreement is minimal and does not bear upon this opinion.

must consider the relevant factors regarding alimony set forth in Tennessee Code Annotated § 36-5-121(i). *Failey v. Failey*, No. M2006-02510-COA-R3-CV, 2008 WL 933202, at *5 (Tenn. Ct. App. Apr. 7, 2008) (citing *Echols v. Echols*, No. E2006-02319-COA-R3-CV, 2007 WL 1756711, at *7 (Tenn. Ct. App. June 19, 2007) (no Tenn. R. App. P. 11 application filed)).

Trial courts are afforded wide discretion in determining whether there is a need for alimony, and if so, the nature, amount, and duration of the award. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011) (citing *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000)). A trial court's decision to award alimony in solido will not be disturbed on appeal. *Id*. An abuse of discretion occurs when the trial court "causes an injustice by applying an incorrect legal standard, reaches an illogical result, *resolves the case on a clearly erroneous assessment of the evidence*, or relies on reasoning that causes an injustice." *Id*. (emphasis added) (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)).

The trial court awarded Mother her attorney's fees upon the finding that she did not have the financial resources to pay her attorney's fees; however, Mother was awarded 60% of the marital property, which will include 60% of the cash proceeds that will result from the sale of the marital residence valued at $207,033.95. Additionally, Mother's income is substantially greater than Father's income, even if you include the mandatory distributions from his IRA. We, therefore, find that the trial court's justification for awarding Mother her attorney's fees constitutes a clearly erroneous assessment of the evidence. *See Gonsewski*, 350 S.W.3d at 105; *see also Wright*, 337 S.W.3d at 176. Therefore, we reverse the award to Mother of her attorney's fees incurred in the trial court.

Mother also seeks to recover her attorney's fees incurred on appeal. "Whether to award attorney's fees on appeal is a matter within the sole discretion of this Court." *Hill v. Hill*, No. M2006-02753-COA-R3-CV, 2007 WL 4404097, at *6 (Tenn. Ct. App. Dec. 17, 2007) (citing *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App .1995)). In determining whether an award is appropriate, we take into consideration "the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered." *Id*. at *6 (citing *Dulin v. Dulin*, No. W2001-02969-COA-R3-CV, 2003 WL 22071454, at *10 (Tenn. Ct. App. Sept. 3, 2003)).

Both parties have pursued this appeal in good faith and Mother and Father have both enjoyed success on some of the material issues in this appeal. Thus, these factors favor the parties equally. Further, we have already determined that Mother's income is substantially

greater than Father's income, and Mother was awarded substantial assets in the division of the marital estate, some of which may be used to pay her attorney's fees on appeal. Accordingly, we respectfully deny Mother's request to recover her attorney's fees incurred on appeal.

## IN CONCLUSION

The judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against both parties equally.

_____
FRANK G. CLEMENT, JR., JUDGE